Before we begin, I would like to say on behalf of the panel, we thank you for appearing. We know it was inconvenient for you, and we appreciate your being here. Thank you very much. May it please the Court, Robert Bacon for the appellant, Ali Barnett.  The process that takes more than 17 years to litigate a case with no opportunity during that time to preserve testimony is not a process effective to protect the rights of the petitioner. It's a kind of process that the Third Circuit called a comity of errors, but that is what the State is offering to Mr. Barnett. Under the Federal Habeas Corpus statutes, he is not required to wait until the indefinite conclusion of that process before litigating his Federal Habeas Corpus petition. I understand that now. Since the briefs were filed, another of the habeas cases has been exhausted, right? Am I correct? Yes. One of the two petitions has been. So there's only one petition left. That's correct. Pending in the State Court, I mean. And how long has that been pending? It was initially filed not as a separate petition, but as a motion to amend the previous petitions filed, I believe, in mid-2003. Well, let me put it this way. When was one, the new petition filed and the briefing completed? State court elected to treat it as a separate petition in November of 2003, and the informal briefing was completed in April of 2004. So we have a. So that's been pending about, what, not quite two years? Not quite two years since the briefing was. So doesn't your argument have to be that that period on that petition is there's something extraordinarily laggard about it? Two years for that Habeas Petition doesn't seem to be awfully long. No. And that is a — that is not the argument. It is necessary and appropriate to aggregate the time period, and that's — Well, but you say aggregate. There's nothing we can do about what's passed, and not only that, but the past petitions are fully exhausted, so we're just waiting for one. So I don't see the — I don't see the purpose of aggregating here. There are two purposes. One, that the prejudice is a continuing harm, particularly the loss of witnesses and evidence. That's something that doesn't roll back and start over at each change of each step in the State process. But perhaps even more importantly, the existence of a second petition and then what the State court treats as a third petition is itself and — chargeable against the State, an artifact of the inadequacy of the process that has been afforded to Mr. Barnett. The — Mr. Barnett's counsel, his prior counsel who were litigating his appeal and his first State petition, were aware from Mr. Barnett of a great number of additional claims that he wished to pursue. They asked the State court for the funds to investigate and research them. They were turned down. They were then subject to the timeliness standards of the California Supreme Court and went forward with the claims that they were able to pursue. Then when Ms. Corey and I were appointed as his Federal counsel, we were able, with the resources of the Federal defender, to pursue these claims, bring them back as a second petition, and subsequently to make some rather small amendments that the Court treated as a third petition. And so the very — the very existence not only of the one small petition that is still there, but the second petition is itself an artifact of inadequacy of the process and part of the delay that is to be charged to the State. You're describing this, it seems to me, quite accurately, and it's an interesting, almost ironic sequence of events. The reason for the second and the third petition is that you've got the unexhausted or mixed petition in Federal court because that allowed you to get Federal investigative money. And now, based upon the Federal investigative money, you filed second and third petitions that the State court has taken some time to respond to, and given the time that they're now taking to respond, not just, at least on your argument, time taken to respond on the third, but the aggregate time you're seeking to be excused from exhaustion. That's a tough argument to make. It is, unfortunately, the process such as it is that the State court has imposed upon Mr. Barnett. It's a process, frankly, that the State court has laid out in cases such as Enrique Gallego as one that it is prepared to accept. And it is a process that in the final analysis, in the words of the statute, is not effective to protect the rights of the appellant, his right to, if he is unsuccessful in the State court, to have a case with a fair opportunity to carry his burden of proof on the merits when and if litigation becomes necessary in Federal habeas corpus. The laws — yes? I'm sorry. The laws most developed, I think, in the Third and the Seventh Circuits, which speak of inordinate and unjustifiable delay with the passage of time, then shifting the burden to the State to establish a justification for the delay. Unfortunately, inordinate is not a term of art, and a bright line cannot be drawn, but has to be looked at in terms of the purpose of the process, the purpose of the exhaustion process, and the terms of Section 2254B1B of a process that is effective to protect the rights of the Petitioner. The delays here, as I began to say in response to Judge Fletcher's question, is the result of State-created impediments, not just the one that I was describing there, but — But it sounds as though the State-created impediments that we're dealing with, given this sequence, and given the fact that they've now — that the State Court has dealt with Petitions 1 and Petitions 2, and the only thing they've not dealt with is the amendments to Petition 2 that they've treated as Petition 3, the State Court impediments that we're now looking at, it seems to me, flow from the failure of the State to provide investigative money, that money that you've now only been able to get once you've filed your Federal habeas, but I don't think the State had any Federal obligation to supply any more investigative money than they did, than Ed did. It's not — it's not a question of money alone. I will agree to that. It is a process that's prolonged over Mr. Barnett's vigorous objections at every stage, with a substitution of counsel along the way, with counsel having known claims that they were unable to present on his behalf. In the meantime, the years — the years accumulating not to three or four years, but to over 17 years since he was initially sentenced, and even if the number of subclaims that remain before the California Supreme Court is very small, the effect is that that small piece of the case is holding the entire case hostage, essentially, from litigation in the Federal court. And in the meantime, the loss of witnesses to death and otherwise the loss of evidence continues to accrue, impairing not only the ability to litigate in the district court, but if the habeas is successful, to litigate, to defend himself in a new trial if that is ordered. Let me ask this, and you may not know. Do you have any indication as to when you might get an answer from the State court on this last petition? No.  The State, in its supplemental excerpts, included an order from Judge Levy on a collateral motion in which Judge Levy assumed probably reasonably that the two might be decided at the same time, and they were not. It is absolutely unpredictable. The short answer is you just don't know. Yes, it is. I'm inclined to think on jurisdictional matters that we're not allowed to review this as an interlocutory appeal under 1291, and that if we do review it, it's on mandamus. Can you talk me out of my conclusion that interlocutory appellate review is not possible under 1291? The reason this is important, obviously, is mandamus is a higher hurdle for you to get over. Absolutely. I understand that. The most important fact for each of the prongs of the Cohen test for appealability is that we're dealing here fundamentally with Mr. Barnett's right to proceed in the Federal Court now, and that is something that, by definition, the Court cannot say years after the fact that, oh, that he should indeed have been allowed to proceed in Federal Court in 2006. In 2008, 2010, no remedy can be provided for that. Cited in the brief, Justice Scalia's concurrence in the Gulfstream case that made this a mandatory medication that proceeded on an interlocutory appeal, in that sense, it's similar to Stack v. Boyle concerning the right to bail pretrial, like Cohen itself, a requirement to post a bond in order for the case to be allowed to go forward at all. So the right to proceed now is a right that cannot be vindicated any other way. It's a right that cannot be vindicated any time but now, and in that sense is conclusive, is separate from the merits of the case. The other point on jurisdiction I would make is that from the Moses Cohn case in the Supreme Court and from the cases in other circuits dealing with stays of habeas, cases tend to  In the case of Cohn, the Supreme Court, in its pending state litigation, has developed the rule that an order granting such a stay is appealable. Under Cohn, we have here an order declining to terminate a stay, which is similar in effect to an order granting a stay. So those cases, both the habeas cases and the ones concerning stays pending state litigation in other contexts also support the appealability of the present order, so it would not be necessary to resort to the mandamus standard. Unless the Court has further questions, I will reserve for rebuttal. Okay. Thank you very much. And we'll now hear from the State. May it please the Court. My name is Tammy Warwick, and I represent the appellee respondent, the warden of San Quentin Prison. Petitioner would like this Court to aggregate the time in order to determine that over 16 years is too long. Well, there's no authority to aggregate time to do so. You have to look at each individual stage of this. And certainly there have been delays in this case, as there are in all capital cases, but this case is not a case that has fallen into the black hole in the California Supreme Court. California Supreme Court has resolved over 200 claims, or approximately 200 claims by counsel and has also resolved approximately 250 pro se claims that have been filed. And certainly if you break down the time frames that have been looked at for each petition, it has not been an inordinate amount of time for the California Supreme Court to decide this many issues. The other important point I'd like to make is that the claims are still being investigated for federal court. So although we are looking at five claims that haven't been exhausted, and we do not have an indication when California Supreme Court will review that, but they did resolve approximately six months ago 67 claims. So it hasn't, again, been pending since April 29, 2004, with nothing being done in this case. And Petitioner has made representations to the district court that there are still claims being investigated. So the five claims not being exhausted is not going to hold up this case unless Petitioner is claiming that a ruling from this court means he doesn't have to exhaust future claims because of a finding that the state court process has been rendered ineffective. As to the court's question regarding jurisdiction, this is not simply an issue where the petitioner is appealing a denial to lift the stay. Petitioner is asking for this court to review the district court's finding that the collateral review process is ineffective. And certainly that is enmeshed with the merits in this case, because the determining that there is prejudice is part of the claims that have been presented to the state court and are being presented to the federal court. And that certainly if this court were to, or the district court were to find that there was prejudice because of the delays, a remedy could be fashioned for that. And also, again, that would mean that it does not go unreviewable. And unless the court has any further questions, Respondent will submit. No, no further questions, or no questions. Do you wish to make any response? Initially, Ms. Warwick said that there was no authority to aggregate time from one stage of the process to another. The Third Circuit in the Burkett case, actually the older of the two Burkett cases that are both cited in the briefs, even took a step further beyond what is necessary to do here for an aggregated time in which a case was pending in two different state courts in the course of finding that the delay was inordinate and prejudicial. Indeed, investigation continues as to claims that have been presented and may produce information that supplements those claims. As I said a few minutes ago, Mr. Barnett is indeed serious about moving forward and not countenancing further delay. And therefore, we are under orders from him not to return to the State court with anything new that was developed. He wishes to go forward in the Federal court on the claims that have been presented to date. That moots out the question that Ms. Warwick raised about the consequences of holding on some hypothetical future claims that have never been presented to any court, a question that is not ripe in any event and under the discretion given by Ryans v. Weber could be resolved by the District Court when and if it arose in ways that need not be addressed here today. The final point that I want to respond to is her suggestion that the question before us today is inextricably intertwined with the merits of the underlying case. It's quite well established for purposes of the Cohen rule that the factual separation need not be absolute and total. I cited in the brief the cases concerning qualified immunity, which involve an assessment of the merits that nevertheless are clearly appealable under Cohen. And also cases involving motions to dismiss for double jeopardy. The Moses-Cohen case itself points out fairly obvious that the refusal to adjudicate the merits is on some level pretty well necessarily separate from adjudicating the merits itself. So unless the court has further questions, I will submit. No further questions for either side. Again, we thank counsel for appearing and for making this argument today. Very well. The case of Barnett v. Brown is now submitted for decision.
judges: Tashima, W. Fletcher, Shea